IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SMART AUDIO TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-134-GMS |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Richard Charles Weinblatt, Esquire, and Stamatios Stamoulis, Esquire of Stamoulis & Weinblatt LLC, Wilmington, Delaware. Attorneys for Plaintiff.

Susan Morrison Coletti, Esquire of Fish & Richardson, P.C., Wilmington, Delaware, and Benjamin C. Elacqua, Esquire, and Michael R. Rueckheim, Esquire of Fish & Richardson, P.C., Houston, Texas, and Ruffin B. Cordell, Esquire of Fish & Richardson, P.C., Washington, DC. Attorneys for Defendant.

## **OPINION**

November  *16* , 2012
Wilmington, Delaware

SLEET, Chief Judge

## I.      INTRODUCTION

On February 3, 2012, the plaintiff, Smart Audio Technologies, LLC ("Smart Audio"),

initiated this action against the defendant, Apple, Inc. ("Apple"). (D.I. 1.) Smart Audio alleges

that one or more products manufactured and sold by Apple infringe United States Patent No.

6,158,163 (the "'163 Patent"). *(Id.* at ¶¶ 6–10.) Presently before the court is Apple's April 19,

2012 motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. §

1404(a). (D.I. 10.) For the reasons that follow, the court will deny Apple's motion to transfer.

## II.      BACKGROUND

Smart Audio is a Texas limited liability company with its principal place of business in

Tyler, Texas. (D.I. 1 at ¶ 1.) Apple is a California corporation having its principal place of

business in Cupertino, California. *(Id.* at ¶ 2.)

Smart Audio is the owner of the '163 Patent, entitled "Vehicle Audio System Having

Random Access Player With Play List Control." *(Id.* at ¶ 7.) Smart Audio brought this suit

claiming that Apple has infringed and continues to infringe the '163 Patent through its

manufacture and sale of one or more products, including the iPod nano. *(Id.* at ¶ 8.) On April

19, 2012, Apple filed a motion to transfer venue to the Northern District of California. (D.I. 10.)

## III.      STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought or to any district or division to which all parties have

2

consented." 28 U.S.C. § 1404(a). This provision "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

Section 1404(a) sets forth a two-step transfer analysis. The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience. *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 20, 2012). The burden rests with the defendant to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

Both parties recognize that the court looks to "the interests of justice and convenience" in deciding a motion to transfer, but they disagree sharply regarding several elements of that inquiry. In particular, they dispute the weight to be accorded Smart Audio's forum preference in light of its decision to file this suit outside its "home turf" of Texas. The court believes that the parties' confusion may be explained by the fact that, since *Jumara* was decided, judges within this district have made subtle adjustments to the language employed in performing the transfer analysis. While the substance of the inquiry has remained constant, the terminology and even the basic steps of the analysis have evolved over time. These inconsistencies are neither surprising nor problematic given the advisement of the *Jumara* court itself that "there is no

3

definitive formula or list of the factors to consider" in determining whether a motion to transfer should be granted.[1]  55 F.3d at 879.  Nevertheless, the court believes that, in the interest of clarity, some further discussion of the transfer inquiry is warranted here.

The court will first discuss how the language employed in the § 1404(a) analysis has evolved. After determining that no meaningful substantive changes have occurred, the court will proceed with its consideration of Apple's motion to transfer.

A.     Evolution of the Transfer Analysis

While it is undisputed that the Third Circuit's decision in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), guides the court's transfer analysis, two facially disparate approaches to that inquiry have emerged in this district. The court first will introduce the *Jumara* decision and the two approaches that have developed. After taking note of the common elements that these methodologies share, the court will turn to a more thorough examination of the differences between them, concluding ultimately that only minor substantive discrepancies exist.

1.     The *Jumara* Standard

In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the Third Circuit provided guidance as to the application of 28 U.S.C. § 1404(a).[2]   As noted above, courts confronting a motion to transfer first ask whether the action could have been brought in the proposed transferee

---

[1] Indeed, "[§] 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The court shares Judge Stark's belief that, "[g]iven the necessarily individualized, fact-specific, case-by-case nature of a decision whether to transfer venue, it is inevitable that the multitude of transfer opinions—including the many issued in this District—will not entirely harmonize with one another." *Intellectual Ventures I, LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 751 (D. Del. 2012).

[2] The law of the Third Circuit governs this court's decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit . . . .").

4

venue and then determine whether transfer to a different forum would best serve the interests of justice and convenience. *See Mitek Sys., Inc.*, 2012 WL 3777423, at \*4. With regard to the second step of this inquiry, *Jumara* instructed district courts look to the various private and public interests protected by § 1404 rather than to any "definitive formula." 55 F.3d at 879. These private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80.[3]

Despite the many relevant considerations set forth by the Third Circuit, a transfer decision remains fundamentally case-specific, and *Jumara* provides little indication as to how a district court should weigh each factor. Over time, judges in Delaware have altered their approach to this analysis, with decisions splitting roughly along two methodological branches. The court will refer to these branches as the "*Affymetrix* approach"[4] and the "modern approach."[5]

---

[3] The court refers to the enumerated private and public interests collectively as the "*Jumara* factors."

[4] The first branch is best illustrated by the court's decision in *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998).

[5] Though the court is unable to point to a single, foundational decision introducing this view, there are a number of recent decisions that serve as examples of the "modern" approach. *See, e.g.*, *Mitek Sys., Inc. v. United*

While the two methods are substantively quite similar, the court fears the several formalistic differences that do exist have complicated the discussion of § 1404(a) in this district.

### 2. Common Elements

In resolving this confusion, it is perhaps useful to begin with an examination of the key elements that these approaches do share. First, both rest upon the same fundamental inquiry: has the movant demonstrated that the balance of convenience tips strongly in favor of transfer? *Compare Intellectual Ventures I, LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 750–51 (D. Del. 2012), *and Mitek Sys., Inc.*, 2012 WL 3777423, at \*8, *with Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 198 (D. Del. 1998). Additionally, each method looks to the various *Jumara* factors—or a subset thereof—in assessing the aforementioned "balance of convenience." *Compare Intellectual Ventures I*, 842 F. Supp. 2d at 752–61, *and Mitek Sys., Inc.*, 2012 WL 3777423, at \*5–8, *with Affymetrix*, 28 F. Supp. 2d at 197–208. Thus, under both approaches, the court effectively engages in a two-step inquiry. It examines the balance of convenience by looking to some or all of the *Jumara* factors (the "balance of convenience analysis") and then determines if that balance of convenience strongly favors transfer (the "'strongly favors' standard"). With these similarities in mind, the court now turns to a more thorough description of the two methods and the facial differences between them.

### 3. Differences Between the Approaches

The *Affymetrix* approach begins from an observation that a plaintiff's choice of forum is the paramount consideration in determining whether to transfer an action under § 1404(a). *Affymetrix*, 28 F. Supp. 2d at 197. This observation, however, is separated from the weighing of

---

*Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423 (D. Del. Aug. 20, 2012); *Intellectual Ventures I, LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012).

the various *Jumara* factors. Rather than considering the mere fact of the plaintiff's forum preference within the balance of convenience analysis, the court shows deference to the plaintiff's selection by requiring the defendant to demonstrate that the interests of justice and convenience weigh *strongly* in favor of transfer.[6] *Id.* at 199. In other words, while the plaintiff's forum preference does make transfer less likely, it does so not as an individual *Jumara* factor but rather by "establishing the burden that a defendant must overcome in order to prevail on its motion to transfer."[7] *Id.* The *Affymetrix* court emphasized that this burden remains constant regardless of whether the plaintiff chooses to bring the action on it "home turf" or can offer "rational and legitimate" reasons for its forum selection.[8] *See id.* at 199–200. The plaintiff's forum choice is always the paramount consideration, and, as such, the ultimate inquiry remains whether the balance of convenience strongly favors transfer. *Id.*

On the other hand, courts performing a transfer analysis under the modern approach have

---

[6] In *Affymetrix*, the court made clear that the "strongly favors" standard is derived from the "paramount consideration" given to the plaintiff's forum preference. *See* 28 F. Supp. 2d at 197–98 ("[A] 'plaintiff's choice of a proper forum is a paramount consideration' . . . *As a result*, on their motions to transfer, [defendants] bear a heavy burden . . . the Court should grant their motions only when the 'balance of convenience . . . is strongly in favor of the defendant.'" (emphasis added) (internal citations omitted)). The *Affymetrix* court also indicated that the plaintiff's forum preference should not be considered as an independent *Jumara* factor within the balance of convenience analysis. *Id.* at 199. The mere fact of the plaintiff's forum choice counts only toward establishing the burden that the defendant must ultimately meet, while the substantive reasons underlying its selection are subsumed by the remaining *Jumara* factors. *Id.* at 200 ("[I]n the . . . "balance of convenience" analysis, the Court puts aside the *fact* that the plaintiff selected a forum and, instead, explores whether the plaintiff 'offer[s any] substantive *reasons* . . . indicating that the convenience to it of litigating in [this forum] even approaches the inconvenience which trial in this forum will impose on the defendants and their witnesses.'" (internal citation omitted)). Subsequent decisions of the court confirm this position. *See, e.g., MP Vista, Inc. v. Motiva Enters. LLC*, No. 07-99-GMS, 2008 WL 5411104, at *2 n.4 (D. Del. Dec. 29, 2008).

[7] The *Affymetrix* approach also does not consider the "defendant's [forum] preference" or "whether the claim arose elsewhere" as independent factors within the balance of convenience analysis—as with the reasons underlying the plaintiff's forum choice, these considerations collapse into the remaining *Jumara* factors. *See Affymetrix*, 28 F. Supp. 2d at 201 ("[A]long with the plaintiff's choice of forum and the defendant's preference, the fact that the claim arose elsewhere should carry no weight in the balance of convenience' analysis.").

[8] The *Affymetrix* court recognized, however, that these considerations could play a role in the broader balance of convenience analysis. *See* 28 F. Supp. 2d at 199–200.

treated the plaintiff's forum preference as an independent *Jumara* factor to be considered within the balance of convenience analysis. *See, e.g.*, *Intellectual Ventures I*, 842 F. Supp. 2d at 753–55. This method, however, also imposes the same heavy burden upon the defendant to demonstrate that the interests of convenience and justice strongly favor transfer. *See id.* ("[The movant's] burden is a heavy one: 'unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail.'" (quoting *Shutte*, 431 F.2d at 25)). Any substantive differences that might exist between the two methodological branches, exist as a result of that burden.

While the *Affymetrix* approach considers the mere fact of the plaintiff's forum preference only in establishing the "strongly favors" standard, the modern approach effectively double-counts that forum choice—the selection is given effect first in establishing the defendant's burden, and then again as one of the individual *Jumara* factors. *See, e.g.*, *id.* at 750–51, 753–55; *Fuisz Pharma v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *10 (D. Del. May 18, 2012) ("[The plaintiff's] choice . . . not only represents the first of the *Jumara* private interest factors . . . it also gives rise to the heightened burden that a defendant faces in showing that transfer is warranted."), *recommendation accepted*, 2012 WL 2090622 (D. Del. June 7, 2012). One might reasonably presume that this double-counting under the modern approach would systematically benefit plaintiffs, creating a substantive divide between the two methodological branches. For the reasons that follow, however, the court believes that any such differences are slight and well within the district courts' range of discretion.

First, the court notes that, unlike the *Affymetrix* approach, the modern method also includes the *defendant's* forum preference in its balance of convenience analysis. *See, e.g.*,

8

*Intellectual Ventures I*, 842 F. Supp. 2d at 755. This provides a partial counterbalance to the plaintiff's choice of forum, reducing any disparity between the two approaches. It is not the whole answer, however, as courts applying the modern method generally give greater effect to the plaintiff's forum selection than to the defendant's. *See, e.g., id.* ("Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiffs preference.").

Rather, the key recognition is that the modern approach only grants the plaintiff's choice of forum increased weight within the balance of convenience analysis when certain conditions exist: the plaintiff must have chosen to litigate on its home turf or at least selected its forum for other rational and legitimate reasons. *See, e.g., id.* at 754 (noting that the plaintiff's "legitimate and rational reasons for suing in Delaware" entitled that choice, at a minimum, to "significant deference" and that Delaware's status as the plaintiff's home turf entitled its decision to "substantial, indeed 'paramount,' weight"). In the absence of these conditions, the court accords the plaintiff's choice of forum no special consideration as an individual *Jumara* factor and weighs it no more heavily than the defendant's forum preference. *Id.* at 753 ("[T]he deference afforded plaintiff's choice of forum will apply *as long as* plaintiff has selected the forum for some legitimate reason." (emphasis added)). Put simply, a plaintiff without good reason to file suit in Delaware will fare no better under the modern approach than under the *Affymetrix* approach, as its mere desire to litigate in this district will be wholly offset by the defendant's own forum choice.

Of course, use of the modern approach may make a small difference in those cases where the plaintiff has, in fact, chosen to litigate on its home turf or selected the forum for other rational

and legitimate reasons. In such cases, the modern method would grant the plaintiff's selection added weight within the balance of convenience analysis—exceeding the weight given to the defendant's preference—while the *Affymetrix* approach would ignore it entirely. Some measure of "double-counting" will occur, with the plaintiff's forum choice having greater effect under the modern approach than under *Affymetrix*.[9] The court, however, is untroubled by this divergence for at least two reasons. First, any systematic difference that may emerge as a result of this departure would fall well within the court's broad discretion to decide whether transfer is warranted—this small split amounts to nothing more than the court, at times, choosing to weigh a single *Jumara* factor somewhat more heavily. Moreover, the court is not convinced that this nominal departure would result in any practical difference—weighing the various *Jumara* considerations is not merely an exercise in judicial arithmetic, whereby the court assigns predetermined values to each factor and then adds or subtracts accordingly. Rather, the balance of convenience analysis is a fundamentally case-by-case, fact-specific inquiry. The nominal differences between the two approaches may matter even less in practice than they do in theory.

For the reasons discussed above, the court believes that the *Affymetrix* approach and the modern approach are substantively quite similar. While they employ somewhat different language, it is difficult to imagine a scenario in which they would arrive at different conclusions, and any minor substantive discrepancy that may exist is well within the district court's discretion to decide the inherently case-specific question of transfer under § 1404(a). Having thus determined that the two methodologies are substantively the same, the court will proceed with its

---

[9] Indeed, *Intellectual Ventures I* serves as a ready example of this split. In that decision, the court both applied the "strongly favors" standard and weighed the plaintiff's choice of forum more heavily than the defendant's forum preference. *See,e.g.*, 842 F. Supp. 2d at 750–51, 753–55. As such, the plaintiff's forum choice effectively counted twice in its favor, while the *Affymetrix* method would only have considered that preference once in establishing the initial burden.

§ 1404(a) analysis, and, in the interests of clarity, the court notes that it will employ the language of the modern approach throughout the discussion that follows.

B.      Propriety of the Transferee Venue

Section 1404(a) permits the court to transfer an action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only order transfer to the North District of California if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

Smart Audio makes no argument that it would have been unable to bring this action in the Northern District of California. Personal jurisdiction would have been proper, as Apple has its principal place of business in Cupertino, California. *See Affymetrix*, 28 F. Supp. 2d at 196. Additionally, a court in the Northern District of California could have exercised subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and venue would have been appropriate under 28 U.S.C. §§ 1391(b) and 1400(b). Since Smart Audio could have brought this action in California, the court turns to the second step of the analysis.

C.      Weighing of the *Jumara* Factors

As discussed above, the next step of the § 1404(a) transfer inquiry invites the court to determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Mitek Sys., Inc.*, 2012 WL 3777423, at *4 (internal quotation omitted). The court will address each of the disputed *Jumara* factors in turn.

1.      Private interest factors

11

i.    Plaintiff's forum preference

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. The court generally accords substantial weight to this forum decision. *See, e.g. AIP Acquisition LLC v. iBasis, Inc.*, 12-616-GMS, 2012 WL 5199118, at *2 (D. Del. Oct. 19, 2012); *Mitek Sys., Inc.*, 2012 WL 3777423, at *5; *Fuisz Pharma*, 2012 WL 1820642, at *10. The plaintiff's preference, however, is not "effectively dispositive of the transfer inquiry," and the court gives this *Jumara* factor less weight in certain situations. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *4. Specifically, the Federal Circuit has indicated that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media*, 662 F.3d at 1223.

In this case, Smart Audio clearly has not sought to litigate on its home turf—it is neither organized under the laws of Delaware nor based in this state. (D.I. 1 at ¶ 1.) Smart Audio argues, however, that its forum preference is still entitled to "substantial deference," as there are "rational, legitimate reasons" for bringing this action in Delaware.[10] (D.I. 15 at 10.) While the court agrees with Smart Audio that the presence of rational and legitimate reasons for choosing to litigate in Delaware entitles a plaintiff's forum preference to something more than minimal weight, the court cannot say that such reasons merit "substantial deference" in light of the Federal Circuit's decision in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).

---

[10] Smart Audio suggests that it wishes to "litigate outside [Apple's] home turf to avoid any attendant advantages [Apple] might gain" and to keep this matter in Delaware where it is already litigating several related cases involving the same patent. (D.I. 15 at 10–11.) Taking these concerns together, the court believes that Smart Audio's decision to bring suit in a Delaware was a rational, legitimate choice. *See Academisch Ziekenhuis Leiden v. Cardiomems, Inc.*, No. 10-1127, 2011WL 864911, at *3 (D. Del. Mar. 9, 2011) ("Plaintiff may have made a strategic decision to litigate outside of Defendant's home turf in an effort to avoid any attendant advantages that [Defendant] might gain."),

12

In the initial decision below, *Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, No. 10-869-SLR, 2011 WL 2293999 (D. Del. June 8, 2011), the district court implicitly premised the significant weight it gave the plaintiff's forum preference on its finding that the "plaintiff . . . selected the forum for some legitimate reason." *Marvell Int'l Ltd. v. Link-A-Media Devices Corp.*, 2011 WL 2293999, at \*1 (D. Del. June 8, 2011). The Federal Circuit, however, granted the defendant's petition for a writ of mandamus and directed the district court to transfer the action, finding that too much weight had been placed on the plaintiff's choice of forum. *In re Link_A_Media Devices Corp.*, 662 F.3d at 1223. It therefore appears that, while the legitimate reasons underlying Smart Audio's forum selection do require that some additional deference be given to its choice, those reasons do not carry the same weight as would a decision by Smart Audio to sue on its home turf.

This factor clearly weighs against transfer, but, for the reasons discussed above, the court will accord it less than the "substantial" or "paramount" weight than it would merit had Smart Audio filed suit in its home forum.[11]

ii.      Defendant's forum preference

The next private interest factor is the defendant's forum preference. 55 F.3d at 879. By filing its motion to transfer, Apple has indicated that it would rather litigate in California, its state of incorporation and the site of its principal place of business. This factor weighs in favor of transfer.

---

[11] Smart Audio also argues that its forum preference is entitled to maximum weight because it forms the paramount consideration in any transfer analysis regardless of "home turf" considerations. (D.I. 15 at 9–10.) The court agrees that the plaintiff's forum choice represents the paramount consideration, but, as explained more thoroughly in Section IV.A, this fact is already reflected in Apple's burden of demonstrating that the convenience analysis strongly favors transfer. At this stage, the court considers only what weight the plaintiff's choice of forum should be given as a *Jumara* factor.

iii.     Where the claim arose

The court next considers where Smart Audio's claim arose. *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Robocast, Inc. v. Apple, Inc.*, No. 11-235-RGA, 2012 WL 628010, at *2 (D. Del. Feb. 24, 2012). Thus, when the defendant in a patent infringement action operates on a national or global level, this factor is typically neutral.

Apple argues, however, that the court must also consider where the development of the accused products occurred and notes that the "research, design, development, and testing of the iPod nano and related products" took place at its California headquarters. (D.I. 11 at 13–14.) Indeed, the court has recognized that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured," *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012), and agrees with Judge Stark's analysis of this factor in *Intellectual Ventures I*, 842 F. Supp. 2d at 751. In that case, while the allegedly infringing products were sold nationwide, at least some of the research and development activities relating to those products occurred in the proposed transferee district. Judges Stark ultimately found that the "location of operative events" factor weighed in favor of transfer, reasoning that, "[i]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Intellectual Ventures I*, 842 F. Supp. 2d at 755 (quoting *In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

In this case, while Apple has allegedly committed acts of infringement in both the

14

District of Delaware and the Northern District of California, the development of the accused product took place only in the latter. As such, the court finds that this factor weighs slightly in favor of transfer.

> iv.     Convenience of the parties

*Jumara* next instructs the court to assess the "convenience of the parties as indicated by their relative physical and financial condition." 55 F.3d at 879. The court looks to several elements in weighing this factor, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc.*, 2012 WL 3777423, at *6 (quoting *Fuisz Pharma*, 2012 WL 1820642, at *12).

Apple argues that it would find litigating in the Northern District of California far more convenient, as that is the district in which it is incorporated and maintains its principal place of business. (D.I. 11 at 16.) Moreover, Apple contends that it would be no more burdensome for Texas-based Smart Audio to litigate in California. Smart Audio, on the other hand, argues that it clearly does find Delaware to be the more convenient forum, pointing to its very decision to bring the action in this forum. Smart Audio also notes that the court's assessment of this factor must account for the disparity in financial resources between the parties.

Both parties make convincing arguments with regard to this factor. The court agrees with Smart Audio that any inconvenience imposed upon Apple must be examined in light of Apple's

vast financial resources,[12] but Delaware does not appear to be a particularly convenient forum for Smart Audio itself. While the court does not presume that California presents a *more* convenient forum than Delaware for Smart Audio, *see Tessera, Inc. v. Sony Elecs., Inc.*, 10-838-RMB, 2012 WL 1107706, at \*4 (D. Del. Mar. 30, 2012) ("[T]he best indicator of a plaintiff's own convenience is the plaintiff's own choice of forum."), the sheer distance between this state and Smart Audio's Texas headquarters does suggest that Delaware cannot be much more convenient.

This *Jumara* factor ultimately requires the court to determine how much inconvenience each party will suffer should it be forced to litigate in the other party's desired forum as opposed to its own. Given Apple's size, the court does not believe that keeping this case in Delaware would cause it much inconvenience. Likewise, given Smart Audio's location and lack of connections to Delaware, the court believes that it would suffer little added inconvenience were this case transferred away from its preferred forum. Since both fora are near equally convenient to the parties, the court finds that this factor is neutral.

v.     Convenience of the witnesses

The fifth private interest factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Apple argues that "[t]here are former Apple employees with knowledge of the design and development of the iPod nano that are located in California." (D.I. 11 at 17.) These potential non-party witnesses are beyond the subpoena power of this court but not that of the Northern District of California. (*Id.*) Smart Audio responds that Apple must demonstrate that

---

[12] While Smart Audio has no employees and had no revenue in 2011, Apple had net income of $25.922 billion for the year ended September 24, 2011. (D.I. 15 at 13.) Apple is a powerful corporation that is, as a recent decision from this district observed, "omnipresent in everyday life." *Robocast, Inc.*, 2012 WL 628010, at \*2.

16

these former employees would actually be unavailable for trial in Delaware. (D.I. 15 at 15.)

The court agrees with Smart Audio and has recognized that this factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena. *See AIP Acquisition LLC v. iBasis, Inc.*, 2012 WL 5199118, at *5 n.6; *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008). While significant distance between an identified witness and the forum may suggest, in some instances, that the witness will be unwilling to appear freely, the court will make no such presumption here. "It is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case," *Tessera, Inc.*, 2012 WL 1107706, at *6, and Apple has failed to demonstrate that its former employees will refuse to testify in Delaware or explain why their testimony will be necessary. Since the mere distance between California and Delaware is not enough to tip this factor in Apple's favor, the court finds that it weighs neither for nor against transfer.[13]

### vi. Location of books and records

Finally, the court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *6.

---

[13] The parties also dispute what effect should be given to the location of the following potential witnesses: the inventors of the '163 Patent, the former assignees of the '163 Patent, and the attorney who prosecuted the '163 Patent. (D.I. 15 at 15–16; D.I. 18 at 12). Since these individuals reside in neither Delaware nor California and because neither party has provided reason to believe that these individuals would be unwilling to testify in either forum, their location has no bearing on the court's assessment of this factor.

In this case, the defendant, Apple, maintains its documents relating to the design and development of the iPod nano at its headquarters in Cupertino, California. (D.I. 11 at 15.) Though the court appreciates Smart Audio's argument that technological advances in the electronic storage and transfer of documents have made this factor somewhat antiquated, *see Tessera, Inc.*, 2012 WL 1107706, at *6; *Mitek Sys., Inc.*, 2012 WL 3777423, at *6, it cannot simply ignore the location of the relevant books and records, s*ee In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. As such, the court finds that this factor weighs ever so slightly in favor of transfer.

### 2. Public interest factors

The parties agree that most of the public interest *Jumara* factors are either neutral or inapplicable in this case. The court will discuss the remaining two factors below.

#### i. Practical considerations

*Jumara* instructs the court to assess "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. One such consideration is the existence of related lawsuits in the district court. *See, e.g., Mitek Sys., Inc.*, 2012 WL 3777423, at *7; *Intellectual Ventures I*, 842 F. Supp. 2d at 759; *see also Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that s 1404(a) was designed to prevent."). Here, Smart Audio argues that this factor weighs strongly against transfer, due to the three related lawsuits pending in this district involving the'163 Patent and devices alleged to infringe that patent in a manner similar to

18

the iPod nano. (D.I. 15 at 17–18.)[14]

Apple, however, contends that the existence of these related lawsuits is irrelevant and that privileging them would run contrary to policy evidenced in recent judicial precedent and legislation. (D.I. 18 at 12–13.) Specifically, Apple points to *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), in which the Federal Circuit explained that a plaintiff could not maintain a single action against multiple defendants for their separately developed accused products merely because their products allegedly infringed the same patent and were "not dramatically different." 677 F.3d at 1358–61. Apple also references 35 U.S.C. § 299(b), which provides that "accused infringers may not be joined in one action as defendants . . . or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." *Id.*

The court is not persuaded by Apple's policy argument. Smart Audio is not attempting to join in a single action each of the defendants alleged to have separately infringed the '163 Patent. Rather, it merely suggests that the commonalities that do exist between the four lawsuits may allow the court to develop some familiarity with the patents and technology involved, thereby conserving judicial time and resources.[15] This is an important practical consideration, and the court therefore finds that this factor weighs against transfer.

      ii.      Local interests

Finally, the court considers "the local interest in deciding local controversies at home."

---

[14] In its Answering Brief, Smart Audio actually argued that four additional lawsuits were pending, but one suit, *Smart Audio Techs LLC v. LE Electronics Inc.*, No. 12-222-GMS, has since been voluntarily dismissed.

[15] Apple's additional contention that this is a simple case does not change the court's analysis—allowing all four cases to proceed before one court will lessen the costs to the judicial system as a whole, even if those costs are slight to begin with.

*Jumara*, 55 F.3d at 879. This factor is typically neutral in the context of patent litigation, as "patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Apple contends that an exception to this general rule exists where, as in this case, neither party is located in the transferor forum but there exists some connection to the proposed transferee forum. (D.I. 11 at 13.)

The court is not convinced. While Apple is indisputably tied to California and this case may well present a matter of local interest in that state, the court cannot say that it represents a "local controversy" in any traditional sense. Judge Robinson's recent discussion of this factor is instructive:

> [P]atent litigation does not constitute a local controversy in most cases. Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

*Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012). This is a lawsuit governed by federal law, brought against a multinational corporation, and concerning a product that is sold and used nationwide. It is truly a national controversy and, as such, the court finds that this factor is neutral.

D.     Transfer Analysis Summary

The court finds that Apple has failed to demonstrate that the balance of convenience strongly favors transfer. Taken together, the parties' respective forum preferences lean slightly against transfer. Though the court does not grant Smart Audio's forum choice paramount weight

as an individual *Jumara* factor, it is entitled to some degree of heightened deference and thus eclipses Apple's own competing preference. While two additional considerations—the location of relevant books and records and the location of operative events—do pull gently in favor of transfer, the remaining private interest factors are all neutral. Likewise, most of the public interest *Jumara* factors are neutral or inapplicable in this case. The "practical considerations" factor, however, weighs against transfer, given the three related cases also pending in this court.

Thus, the court is confronted with two private interest considerations leaning slightly in favor of transfer, one public interest factor recommending that the case remain in this district, and Smart Audio's Delaware forum choice weighing a little more heavily than Apple's own preference for California. Even if the court could say that the balance of convenience tilts somewhat toward transfer, Apple certainly has not shown that the interests of convenience and justice strongly favor its position.

## V. CONCLUSION

For the foregoing reasons, the court will deny Apple's motion to transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SMART AUDIO TECHNOLOGIES, LLC,           )
                                          )
              Plaintiff,                   )
                                          )
       v.                                 )        Civil Action No.  12-134-GMS
                                          )
APPLE, INC.,                              )
                                          )
              Defendant.                   )
                                          )

## ORDER

At Wilmington this 16th day of November 2012, consistent with the court's Opinion of

this same date, IT IS HEREBY ORDERED that:

The defendant's Motion to Transfer (D.I. 10) be DENIED.

CHIEF, UNITED STATES DISTRICT JUDGE